AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Joanne Marian SEGOVIA<br><br>*Defendant(s)* | )<br>)<br>) Case No. **CR 23-70347-MAG**<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 10, 2023  in the county of  Santa Clara  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(3) and 21 U.S.C. § 963 | Attempt to unlawfully import a controlled substance (specifically valeryl fentanyl) |

This criminal complaint is based on these facts:

Please see attached Affidavit of Homeland Security Investigations Special Agent David Vargas.

☐ Continued on the attached sheet.

/s David Vargas
*Complainant's signature*

Approved as to form  *Joseph Tartakovsky*
AUSA  Joseph Tartakovsky

Special Agent, Homeland Security Investigations
*Printed name and title*

Sworn to before me by telephone.

Date: March 27, 2023

*Virginia K. DeMarchi*
*Judge's signature*

City and state: San Jose, California

Hon. Virginia DeMarchi, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, David Vargas, a Special Agent with Homeland Security Investigations, being duly sworn, hereby declare as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a Complaint against defendant Joanne Marian SEGOVIA for one count of attempt to unlawfully import a controlled substance (specifically valeryl fentanyl) in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(3) and 21 U.S.C. § 963, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts set forth in this affidavit are based on my own personal knowledge, information I obtained from other individuals during my participation in this investigation, my review of documents and records related to this investigation, including criminal history documents, police and lab reports, and information gained through my training and experience. To the extent that any information in the affidavit is not within my personal knowledge, it has been made available to me through reliable law enforcement sources, and I believe such information to be true. In addition, where I report information I learned from others or from reviewing documents and reports prepared by others, such information is recounted in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of obtaining a Complaint, I have not included every fact known to me that supports probable cause. Rather I have set forth only the facts that I believe are necessary to support the Complaint. My understanding of the significance of certain events and facts may change as the investigation progresses.

## AFFIANT BACKGROUND

4. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law.

5. I am a Special Agent of Homeland Security Investigations (HSI) and have been so employed since December 2017. Before becoming a Special Agent (SA), I was employed as a

1

Deportation Officer and Immigration Enforcement Agent of Immigration and Customs Enforcement (ICE) since February 2007.  I have completed multiple Law Enforcement Training Academies to include HSI Special Agent Training and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.

6.   I am responsible for investigating violations of federal criminal statutes, including cases involving large-scale narcotics distribution.  During the investigation described herein, I have spoken to, and worked with, more experienced federal, state, and local narcotics agents and officers.  During my employment as a Special Agent, I have participated in investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records and electronic files, investigative interviews, and the service of search and arrest warrants. These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the concealment and laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with drug offenses, including violations of 21 U.S.C. § 841, 846, and 952.

## APPLICABLE STATUTES

7.   21 U.S.C. § 952(a) makes it unlawful for a person to knowingly bring into the United States, from a place outside of the United States, a Schedule I or II controlled substance, or any narcotic drug, knowing that the substance is a controlled substance or some other prohibited drug.

8.   21 U.S.C. § 960(a)(1) and (b)(3) set out penalties for violations of 21 U.S.C. § 952.

9.   21 U.S.C. § 963 provides that any person who attempts or conspires to commit any offense defined in 21 U.S.C. § 952 shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## STATEMENT OF PROBABLE CAUSE

**A. Late 2022: Investigation into India-based network leads to SEGOVIA**

10. In late 2022 Homeland Security agents were investigating a network that ships Indian-produced controlled substances, including synthetic opioids, into the San Francisco Bay Area. Law enforcement has now identified hundreds of parcels, destined to 48 states, originating from this network. These parcels collectively have contained hundreds of thousands of pills.

11. A network operative's smartphone was searched. It contained encrypted messages. Agents encountered two messages, dated in early September 2022, that identified a "J Segovia," at an address in San Jose, along with the words "180 pills SOMA 500mg."[1] A California Department of Motor Vehicle database search identified that address as SEGOVIA's residence.

12. U.S. Customs and Border Protection records revealed that, between July 2019 and January 2023, SEGOVIA's address was the intended destination of five shipments that officials seized and opened. These packages contained, respectively, the following controlled substances:[2] approximately 1.55 kilograms of Zolpidem (around 4,000 pills), approximately 1.42 kilograms of Tramadol, approximately 614 grams of Tapentadol, approximately 432 grams of Tapentadol, and approximately 1.16 kilograms of Tramadol.

13. Agents also discovered that, according to CBP records, between October 2015 and January 2023, SEGOVIA had approximately 61 shipments mailed to her home. These shipments originated from Canada, China, Spain, Great Britain, Hong Kong, Hungary, India, and Singapore. The packages were manifested as "Wedding Party Favors," "Shirts Tops," "Gift Makeup," "Chocolate and Sweets," "Food Supplement," "Health Product," and "Supplement." In my training and experience, such a large number of parcels, from such a diverse array of foreign

---

[1] According to the U.S. Drug Enforcement Administration, "Soma®" is a trade name for Carisoprodol, a Schedule IV muscle relaxant, and a drug increasingly diverted and abused. *See* https://www.deadiversion.usdoj.gov/drug_chem_info/carisoprodol/carisoprodol.pdf.

[2] Zolpidem is Schedule IV anti-insomnia medication. Tramadol is a Schedule IV opioid. Tapentadol is a Schedule II opioid.

countries, and with labels like these, are often indicative of illicit drug shipments.[3]

14. According to the San Jose Police Officers' Association (SJPOA) website, SEGOVIA "has been with the SJPOA since 2003 and serves as Executive Director."[4]

### B. February 1, 2023:  SEGOVIA's first voluntary interview with HSI agents

15. On February 1, 2023, two Homeland Security agents interviewed SEGOVIA at her home. She was told that her name, address, and pill order were found during the course of my investigation. During the interview SEGOVIA:

- Claimed to have only ordered "supplements" and "nothing out of the ordinary."
- Claimed to "work for the police department."
- Claimed to have never ordered or received prescription medications through the mail and said that she would never do so, adding "I wouldn't even know where to start."
- Said that she recognized that it was not safe to buy prescription medications on the internet and that doing so was unlawful and "asking for trouble."
- Claimed to have no idea why her name and address was found in the phone of a suspected drug trafficker.
- Refused to allow agents to view her CashApp transactions.

16. At the end of the interview, I gave SEGOVIA my cellphone number and requested that she contact me if she remembered anything that might help in my investigation.

### C. March 14, 2023: SEGOVIA's second voluntary interview with HSI agents

17. On March 3, 2023, SEGOVIA left me a voicemail telling me that she was back from vacation and had information that could be helpful with my investigation.

18. On March 14, 2023, SEGOVIA was interviewed at the HSI San Jose office by me and two other agents.  During the interview SEGOVIA:

- Claimed that she had nothing to do with the orders sent to her and blamed the ordering on a woman ("it all leads to her") that she identified as a family friend and housekeeper. She said that this woman's culpability occurred to her ("like a light bulb") after her meeting with HSI in February. She repeatedly characterized this

---

[3] Not all shipments are captured in CBP indices, so these results may not reflect every shipment to SEGOVIA. Additionally, CBP indices only contain shipments entering or departing the U.S.
[4] *See* sjpoa.com/staff (last accessed March 24, 2023).

- individual as suffering from a substance abuse disorder.
- Claimed that the money referenced in her CashApp account was not (i.e., SEGOVIA's) money, but instead implied that the CashApp payments tracked the amounts that she had paid to this woman for her housekeeping work.
- Made inconsistent statements about whether this woman had access to her (SEGOVIA's) personal smartphone.
- Claimed that this woman impersonated her on the WhatsApp communications and said that this woman was able to do so because she "knows so much about me."
- Said that she didn't want to "throw [this woman] to the wolves" but that she wanted to be "honest" with agents.
- Provided a letter from CBP that she received around February 23, 2023 that stated that officials at LAX International Airport seized a package, addressed to her home, that contained 1.55 kilograms of Zolpidem, appraised at $1,920. The basis for the seizure included "21 USC 952 - Importation of Schedule IV Controlled Substances." The letter noted that the parcel, originating in the U.K., declared its contents as "Toys." She also showed agents the empty box from which the drugs had been removed by customs.

### D. March 2023: Agents discover prior CBP Notice of Seizure letters to SEGOVIA

19. Around March 21, 2023, agents later learned of a s CBP Notice of Seizure letter, dated August 5, 2020, that had been mailed by CBP to SEGOVIA. This letter informed her of the impoundment of 1,418 grams of suspected Tramadol, a synthetic opioid, valued at around $700, seizure in part under 21 U.S.C. § 952.

20. On March 27, 2023, agents learned of another CBP Notice of Seizure, also sent to SEGOVIA's home address, on July 23, 2019. This letter indicated a seizure of 1160 grams of Tramadol, valued at $5,020, and seized pursuant to "21 U.S.C. 925 (importation of controlled substances)." CBP received a response from SEGOVIA, with a handwritten signature and the handwritten date July 29, 2019, stating that she was "abandon[ing]" her interest in the property.

### E. March 2023: Review of SEGOVIA's WhatsApp chats

21. SEGOVIA gave consent to agents to download the WhatsApp communications on her phone.

5

22. Agents found a conversation between the user of SEGOVIA's phone and a user with a number with India's country code (+91) (INDIA CHAT). This ongoing correspondence began in January 2020 and continued for over three years, until March 8, 2023. The INDIA CHAT contained hundreds of messages referring to "soma" or "orange pills"[5] as well as discussing shipping and payment. The chat also contained about 235 images—depicting pills, shipping labels, packaging, and payment receipts or confirmations.



23. In an exchange from the INDIA CHAT in April 2021, SEGOVIA was directed to send a package to a woman in North Carolina. On April 7, 2021, SEGOVIA's account sent the photograph (at right) of a UPS receipt containing pre-written account and return address information and signed by "J. SEGOVIA".

24. The return address on the UPS receipt was 1151 North Fourth Street, in San Jose, California, which is the address of San Jose Police Officers' Association.

25. According to CBP records, this North Carolina addressee is associated with at least five prior seizures of controlled substances including Tramadol, Alprazolam, and Diazepam. In the INDIA CHAT, this addressee's name was referenced about 34 times, mostly in regard to payments being requested or issued.

26. Based on my training and experience, I know that shippers of controlled substances often send receipts and tracking numbers as proof that they in fact sent a package. I believe that

---

[5] Based on my training and experience and from review of SEGOVIA's prior shipment seizures, I believe that the "orange pills" are Tapentadol, an opioid.

6

the receipt provided by SEGOVIA was offered by her as proof that she sent a package to the North Carolina addressee.

27. I also believe the use of the San Jose Police Officers' Association shipping label indicates that SEGOVIA used her office as part of her purchasing and distribution of controlled substances.



28. In June 2021, in the INDIA CHAT, an image (below) was sent from SEGOVIA's account depicting an HP computer monitor that showed a PayPal receipt in the amount of $999.99, sent to an entity with an apparent Indian name. Several items are visible in the area in front of the monitor, including a San Jose Police Officers'



Association letter opener with a business card containing SEGOVIA's name and notes containing apparent POA-related codes.

29. On October 20, 2021, also in the INDIA CHAT, an image was sent from SEGOVIA's account of a computer monitor with a heart-shaped flag at the bottom, displaying a PayPal receipt in the amount of $500, sent to an individual with an apparent Indian name. An HSI agent observed a computer monitor with heart-shaped flag icon in SEGOVIA's residence during the interview on February 1, 2023.

30. Based on my training and experience, I believe that SEGOVIA was using a computer at her home, and another at her office, to pay for shipments of controlled substances.

7

31. During the INDIA CHAT, the following messages were sent from SEGOVIA's account:

- June 14, 2021: "Sorry, i had 50 new officers starting today so if I've been tied up all morning. I'll be back on the office within an hour and I'll take care of all of it! Any news on the soma??"

- May 2, 2022: "Im so sorry, im on a business trip because we had 2 officers that got shot! I should be home tomorrow night so ill get them shipped as soon as i can."

- July 4, 2022: "Im going to put whats app on my computer so I'll have it if something weird goes on with my phone. So i need to send you $900 for the orange pills that are on their way, are they on their way?? My [family member] is going on vacation so i want to give her enough to last but that is going to make me short, do you know when they are coming?

- September 12, 2022: "Yes, i got the 500 mg soma. I also got 180 of the orange pills."[6]

- January 23, 2023: "I sent the $2300, but it won't let me send the 375… too much in one day. Ill send that tomorrow!"[7]

32. Based on my training and experience, and my review of the messages, I believe that SEGOVIA was the sender of the messages in the INDIA CHAT.  Among other things, she references police officers in two of the messages.

33. I believe that the chat demonstrates SEGOVIA's lack of candor when interviewed by HSI agents. HSI agents speaking with SEGOVIA outlined her exact modus operandi to her. SEGOVIA instead insisted she was unaware of the conduct and tried to frame another individual.

F. **March 2023: Review of SEGOVIA's CashApp transactions**

34. In the March interview, SEGOVIA gave agents consent to review and photograph the CashApp transactions on her phone.  Review revealed that the CashApp account name is

---

[6] Based on my training and experience, I believe that this message is in reference to the 180 Soma pills that were found in the chat in the trafficker's smartphone searched in September 2022.

[7] This was the last message sent from SEGOVIA's account. SEGOVIA was interviewed by HSI on February 1, 2023.

"JoanneSegovia." The phone number associated with the account is SEGOVIA's phone. The email is SEGOVIA's email at "sjpoa.com."

35. SEGOVIA conducted approximately CashApp 127 transactions with five recipients.

36. Based on my training and experience, I believe that these transactions were for the purchase of controlled substances. Two of the addressees for CashApp transactions have already been identified as likely receiving and distributing controlled substances.

### G. March 15, 2023: Valeryl fentanyl shipment from China to SEGOVIA intercepted

37. On March 15, 2023, I was notified of a controlled substance seizure in Kentucky that occurred on March 13, 2023. The seized parcel originated from an address in China on March 10, 2023 and declared its contents as "CLOCK." It was addressed to SEGOVIA's home. Inside the parcel was a disassembled clock kit containing square and round white adhesive stickers or patches on which the fentanyl-related substance was found. (I have not seen drugs sent in this form before.) Presumptive testing with a Gemini analyzer identified Valeryl Fentanyl Hydrochloride (net 0.9 grams) on the square stickers or patches and Valeryl Fentanyl Hydrochloride and/or Oxycodone hydrochloride (net 2.7 grams) on the round stickers or patches. Valeryl Fentanyl is a synthetic fentanyl analogue and a Schedule I narcotic. Oxycodone hydrochloride is a Schedule II narcotic.

38. I believe that SEGOVIA stopped ordering controlled substances from her previous supplier (apparently based in India) after HSI Agents interviewed her in February 2023 and began to order controlled substances from a new supplier, who is shipping from China.

### H. March 24, 2023: HSI search of SEGOVIA's home and San Jose Police Officers' Association office

39. On March 24, 2023, HSI San Jose agents and others executed a search warrant at SEGOVIA's home and the San Jose Police Officers' Association office. They seized approximately 73 Tapentadol pills and about 80 orange pills labeled "G2." At SEGOVIA's office they seized 283 Tapentadol pills.

40. A review of SEGOVIA's iPhone revealed a CashApp transaction dated March 23, 2023, with $800 paid to an individual with the initials KH.

9

33. According to CBP records, KH has received at least 62 imported shipments between 2015 and 2022, including the following suspected drug parcels: "product samples" from China in 2015, "collagen tablets" from Poland in 2019, two shipments of "body care products" from the Netherlands in 2019, and "Q10 beauty supplements" from Hungary in 2019.

41. A review of SEGOVIA's iPhone revealed emails between SEGOVIA and another individual, dated March 21, 2023, with the subject line: "Hey joanne order for your orange." They discussed payment and dispatching CashApp money or pills to KH.  SEGOVIA's signature line included a reference to her as "Executive Director" of the San Jose Police Officers' Association.

42. Open source research of the telephone number of SEGOVIA's interlocutor revealed a website that advertises the sale of medications and pills, including "Tramadol," "Adderall," and "Ambien," and offers "[c]heap" prices and "[o]vernight shipping."

43. The "contact us" information on this website lists SEGOVIA's address.

44. The telephone number listed on this website appears in a 2022 police report from Alabama involving a victim who died from a drug overdose. His spouse told police that the victim regularly ordered pills from the user of telephone number that SEGOVIA also communicated with. The spouse said that the user of this telephone number mailed her husband pill shipments.

45. During the search of SEGOVIA's office, the UPS receipt reflecting the shipment to the North Carolina address was found in SEGOVIA's file cabinet.  Agents also found items matching those appearing in the INDIA CHAT photograph—including an San Jose Police Officers' Association letter opener with a business card bearing SEGOVIA's name.

46. I believe that SEGOVIA knowingly provided false information to criminal investigators in this investigation. I also believe SEGOVIA has continued to order and pay for controlled substances in violation of 21 U.S.C § 952 and that she did so after her first interview with HSI agents and shortly before her second interview with HSI agents.

## CONCLUSION

47. Based on the information set forth in this Affidavit, I submit that there is probable cause to believe that Joanne Marian SEGOVIA attempted to unlawfully import controlled substances (specifically valeryl fentanyl), in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(3) and 21 U.S.C. § 963, in the Northern District of California.

48. I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____/s/_____
DAVID VARGAS
Special Agent
Homeland Security Investigations

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this  27  day of March 2023.  This application and warrant are to be filed under seal.

HON. VIRGINIA DEMARCHI
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location:
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

## OFFENSE CHARGED

21 U.S.C. §§ 952(a), 960(a)(1) and (b)(3) and 21 U.S.C. § 963

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: Maximum penalties: Imprisonment: 20 years (21 U.S.C. § 960(b)(3))
Fine: $250,000 (18 U.S.C. § 3571; 21 U.S.C. § 960(b)(3))
Supervised Release: At least 3 years (18 U.S.C. § 3583(b)(2))
Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))

### DEFENDANT - U.S

Joanne Marian SEGOVIA

DISTRICT COURT NUMBER

**CR 23-70347-MAG**

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any): **HSI**

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  [ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: **ISMAIL RAMSEY**

[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): **Joseph Tartakovsky, AUSA**

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [X] If not detained give date any prior summons was served on above charges ▶ _____

2) [ ] Is a Fugitive

3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge

5) [ ] On another conviction  [ ] Federal  [ ] State

6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No
If "Yes" give date filed: _____

**DATE OF ARREST** ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[X] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: _____

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address: _____

Date/Time: _____    Before Judge: _____

Comments: